## 30682. CITY OF ATLANTA v. FOSTER & COOPER, INC.

PER CURIAM.

This case involves the breach of an alleged contract between the City of Atlanta and Foster & Cooper, Inc., the respondent. The respondent, as plaintiff in the trial court, brought an action against the city for breach of the alleged contract. The city contended that what the respondent

alleged to be a binding contract was not, as a matter of law, a contract that could be binding upon the city; that since there was no contract there could have been no breach; and that there was no liability whatsoever on the part of the city. The trial judge granted partial summary judgment in favor of the respondent on the issue of liability; he certified the ruling for immediate appellate review; the Court of Appeals affirmed the trial judge's grant of summary judgment on the issues of liability (see *City of Atlanta v. Foster & Cooper,* 136 Ga. App. 159 (220 SE2d 724) (1975)); and we granted the city's application for a writ of certiorari to review the decision and judgment of the Court of Appeals. We deem the issue in the case to be of gravity and importance, because a decision in this case will determine the procedure by which the city can enter into binding contracts under its new charter, Ga. L. 1973, p. 2188 et seq. This is a case of first impression under the new charter, and the issue presented is primarily one of statutory construction.

On January 23, 1974, the respondent, pursuant to an invitation to bid from the city, submitted its proposal to construct a building for the sum of $2,482,200. This proposal included five alternates that would be constructed for additional sums.

On January 30, 1974, the architect advised the city's airport director that the respondent was the low bidder on the base bid, excluding alternates, and recommended "that the City enter into an agreement with Foster and Cooper in the amount of their base bid."

On February 1, 1974, the airport director wrote the city's director of purchasing that he concurred in the architect's recommendation that the respondent's base bid "be accepted by the City with the various alternates being open for acceptance at a later date, as specified in the contract documents."

On February 13, 1974, the purchasing director wrote the respondent: "Your firm has been awarded contract on subject project. This is as information to you and is not a notice to proceed. Contract documents are being prepared and will be forwarded to you for execution. Please do not, under any circumstances, perform any work or have supplies delivered to the job site, until you have official

notice from this department. To do otherwise, may jeopardize your receipt of payment for such work and/or materials."

On February 15, 1974, the purchasing director wrote the respondent: "Enclosed is subject contract now ready for your portion to be executed . . . As soon as you have completed your portion of the execution, return entire contract to this office for finalizing. Your completely executed copy will be returned to you after Mayor Jackson has approved."

On February 18, 1974, the City Council adopted a resolution which in pertinent part said: "Now, therefore, be it resolved by the Council of the City of Atlanta the award of this contract be made to Foster & Cooper, Inc., that the City Attorney be directed to prepare an appropriate contract, and that the Mayor be authorized to execute the same on behalf of the City of Atlanta, in the amount of Two Million, Four Hundred Seventy-Six Thousand, Two Hundred and No/One-Hundredths ($2,476,200.00) Dollars, with the City of Atlanta reserving the right to accept at any time during the life of the contract any or all of the alternates set out in the Proposal." A true copy of this resolution, as certified by the city clerk, shows: "Adopted by City Council February 18, 1974. Returned to Clerk of Council without approval of the Mayor February 27, 1974. Approved per Section 2-403 of the 1974 Charter."

The mayor declined to execute a contract with the respondent called for in the resolution adopted by the council on February 18, 1974.

On April 1, 1974, the council adopted the following resolution: "Whereas, the Council of the City of Atlanta, by resolution adopted on February 18, 1974 and approved on February 26, 1974, awarded to Foster & Cooper, Inc., the contract for the construction of the North Cargo Building at Hartsfield Atlanta International Airport; and

"Whereas, said award to Foster & Cooper, Inc. was made at a time when the City of Atlanta was unable to give consideration to the alternates set out in the Advertisement for Bids and the several proposals submitted by the respective bidders, and Foster & Cooper, Inc. was determined to be the lowest and best bidder on

the base building only; and

"Whereas, subsequent to the authorizing action of the Council, and prior to the execution of a contract with Foster & Cooper, Inc., sufficient commitments were received from the airlines and others to make desirable the election of the several alternates; and

"Whereas, from a review of all the bids, considering the bids on the base building and on the several alternates, it has appeared that McDonough-Metro, Inc. is the lowest bidder by $567,360.00, the total bid of McDonough-Metro, Inc. being in the sum of $6,386,600.00, and the Finance Committee has recommended that the prior action of the Council awarding the contract to Foster & Cooper, Inc. be rescinded and that the contract be awarded to McDonough-Metro, Inc.

"Now, therefore, be it resolved by the council of the City of Atlanta, Georgia that the resolution adopted by the Council of the City of Atlanta on February 18, 1974 and approved on February 26, 1974, awarding the contract for the construction of the North Cargo Building at Hartsfield Atlanta International Airport to Foster & Cooper, Inc., be rescinded, and that the authority of the Mayor to execute said contract be withdrawn.

"Further resolved that the award of said contract for the construction of the North Cargo Building at the Hartsfield Atlanta International Airport be made to McDonough-Metro, Inc. in the total sum of $6,386,600.00, that the City Attorney be directed to prepare an appropriate contract, and that the Mayor be authorized to execute the same on behalf of the City of Atlanta."

A contract was thereafter entered into between the city and McDonough-Metro, Inc., and respondent filed its suit against the city for damages for the breach of the alleged contract with it.

Respondent contends that the adoption of the resolution on February 18, 1974, by the council, and approved by operation of law when not vetoed by the mayor within eight days, constituted a binding contract between respondent and the city, and that the mayor had a duty, merely ministerial in nature, to sign the contract.

The city contends that the adoption of the February

18 resolution, which admittedly was not vetoed by the mayor within the specified time, did not constitute a contract binding upon the city; and that execution of a contract by the mayor was an absolute necessity before there existed a legal contract binding upon the city.

Section 3-105 of the new charter (Ga. L. 1973, pp. 2203, 2204) provides that the mayor shall have the power and it shall be his duty to: "(11) When authorized by the Council, negotiate . . . contracts . . . on behalf of the City and execute same after final approval by the Council."

Section 6-401 of the charter (Ga. L. 1973, p. 2247) reads: "The governing body shall prescribe by ordinance and resolution the procedures to be followed in the making of contracts which shall bind the City. All contracts and all ordinances and resolutions which shall make or authorize contracts shall be approved as to form by the City Attorney. The Mayor shall sign all contracts; provided, however, the governing body may authorize the Mayor by ordinance to designate another appropriate official to sign any type contract. The clerk of the governing body shall authenticate all contracts. The original of all contracts shall be maintained on file in the office of the Director of Finance."

It is our opinion that when the February 18th resolution of the council became final on February 26, because it had not been vetoed by the mayor, it created contractual obligations between the parties. See Sec. 2-403, City Charter. This resolution, upon becoming effective, constituted the final approval of the council contemplated by Section 3-105 of the City Charter. Sec. 6-401 of the City Charter provides that all contracts and all ordinances or resolutions which shall make or authorize contracts shall be approved as to form by the city attorney. That section also requires the mayor to sign all contracts unless some other authorized official is designated to sign them.

We interpret the council's resolution in that case as having made a contract with Foster and Cooper, Inc. It was subject to veto by the mayor but when he failed to veto it, the resolution, accepting the offer to contract made by Foster and Cooper, Inc. (their bid), became binding on the city on February 26. All that remained to be done, under

the council's resolution, was the preparation of a formal document by the city attorney, reciting the terms of the contract made by the council, and the signing of the formal document by the mayor which he was required to do under Sec. 6-401 of the city charter.

This interpretation of the council's February 18th resolution, that a contract was intended and made by it, is supported by the council's subsequent action taken on April 1, 1974, to rescind "the prior action of the Council awarding the contract to Foster and Cooper, Inc. . ." Therefore, for the reasons stated in this opinion, we believe the judgment of the Court of Appeals in this case is correct.

*Judgment affirmed. All the Justices concur, except Gunter and Hill, JJ., who dissent.*

ARGUED FEBRUARY 10, 1976 — DECIDED APRIL 27, 1976 — REHEARING DENIED MAY 17 AND MAY 28, 1976.

*Henry L. Bowden, Robert S. Wiggins,* for appellant.
*Swift, Currie, McGhee & Hiers, Glover McGhee, J. Alexander Porter,* for appellee.